IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **13 CR 0402** |
| | ) | |
| v. | ) | Violation: Title 18, United States |
| | ) | Code, Section 1347 |
| ELLYSE LAMON | ) | |
| | ) | JUDGE KENNELLY |

The UNITED STATES ATTORNEY charges:          MAGISTRATE JUDGE COLE

1.      At times material to this information:

        a.      Company A sold durable medical equipment, including back braces and transcutaneous electrical nerve stimulation units, also known as tens units, to patients in the Northern District of Illinois and elsewhere.

        b.      Defendant ELLYSE LAMON was an account executive employed by Company A. As part of her employment, defendant LAMON obtained orders for durable medical equipment from physicians and caused claims for such durable medical equipment to be submitted to Medicare.

        c.      Physician A worked at a pain medicine center in Chicago, Illinois. He was a licensed physician in the State of Illinois and an approved Medicare provider.

**FILED**

MAY 1 4 2013
5-14-2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

       d.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), which provided free or below-cost health care benefits to certain eligible beneficiaries. Medicare helped pay for certain medically necessary items, including durable medical equipment. Durable medical equipment was defined as equipment that, among other things, was primarily and customarily used to serve a medical purpose and generally was not useful to a person in the absence of an illness or injury. Medicare paid for the rental or purchase of durable medical equipment when, among other things, a physician prescribed the items and the items were medically necessary.

       e.      In order to obtain reimbursement from Medicare, a supplier of durable medical equipment must have received from a patient's treating physician a signed and dated written order accompanied by information establishing that the durable medical equipment was medically necessary. For tens units, Medicare also required that a physician conduct a face-to-face visit with a patient in order to verify that the tens unit was effective prior to continuing to reimburse the supplier for the tens unit.

       f.      Company A was approved to provide durable medical equipment to Medicare beneficiaries and to receive compensation for these products, provided that the ordering of such products met Medicare's requirements for reimbursement and that the products were actually provided to the beneficiary. Company A employees were responsible for obtaining orders for durable medical equipment and supporting documentation for such orders from physicians. The information collected by Company A employees was

2

transmitted to Company A's office in Vancouver, Washington, which, based on that information, submitted claims to Medicare.

2.       Beginning no later than in or about October 2010, and continuing through in or about May 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ELLYSE LAMON,

defendant herein, knowingly and willfully participated in a scheme to defraud a health care benefit program, namely, Medicare, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of and payment for health care items, which scheme is further described below.

3.       It was part of the scheme that defendant LAMON caused Company A to submit claims to Medicare that falsely represented that a physician had prescribed certain pieces of durable medical equipment, including back braces and tens units, when defendant knew that no physician had prescribed the items and that the items were not medically necessary.

4.       It was further part of the scheme that, in order to provide written support for the fraudulent claims submitted to Medicare, defendant LAMON obtained physicians' patient records without the physicians' permission and added false information both supporting the medical necessity of durable medical equipment and reflecting that the physician had ordered

durable medical equipment for the patient, knowing that such equipment had not been ordered by the patient's physician and was not medically necessary.

5.     It was further part of the scheme that defendant LAMON forged doctors' signatures on documents, including false treatment records she created, in order to provide written support for the durable medical equipment claims that defendant LAMON caused to be submitted to Medicare.

6.     It was further part of the scheme that defendant LAMON used patient information that she had inappropriately accessed at the pain medicine center in Chicago to set up patient meetings where defendant LAMON falsely told patients receiving the durable medical equipment that the patients' doctors had prescribed the durable medical equipment, knowing that the patients' doctors had not prescribed the durable medical equipment and that it was not medically necessary.

7.     It was further part of the scheme that defendant LAMON created records falsely reflecting that patients' physicians had personally met with the patients to evaluate the medical effectiveness of the patients' tens units and forged the physicians' signatures on those records when, in fact, no such meetings had occurred between the patients and physicians.

8.     It was further part of the scheme that defendant LAMON submitted and caused to be submitted to Medicare false claims for durable medical equipment that defendant LAMON knew were not properly payable because (1) no physician had prescribed the

4

durable medical equipment; (2) the durable medical equipment was not medically necessary; and (3) defendant LAMON falsified the medical records supporting the claims.

9. It was further part of the scheme that on or about April 20, 2011, defendant LAMON caused Company A to submit an order to Medicare for an orthotic brace that was not prescribed by Physician A. In order to obtain reimbursement for the orthotic brace from Medicare, defendant LAMON wrote a false durable medical equipment order in Individual A's medical chart, which she transmitted to Company A, so that it appeared that Physician A had prescribed the brace.

10. It was further part of the scheme that between on or about October 1, 2010, and on or about May 31, 2011, defendant LAMON knowingly submitted and caused to be submitted to Medicare at least approximately $352,685 in false and fraudulent claims for durable medical equipment, resulting in the payment of at least approximately $206,233 to Company A. Defendant profited from these fraudulent claims by receiving increased commissions and other benefits from Company A.

11. It was further part of the scheme that defendant LAMON misrepresented, concealed, and hid and caused to be misrepresented, concealed, and hidden acts done in furtherance of the scheme and the purposes of those acts.

12. On or about April 20, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ELLYSE LAMON,

defendant herein, knowingly and willfully executed and attempted to execute the scheme by causing to be submitted a false claim to Medicare for durable medical equipment, including an orthotic brace for Individual A, that defendant ordered without a valid prescription;

In violation of Title 18, United States Code, Section 1347.

Gary S. Shapiro by JRP
UNITED STATES ATTORNEY

6